IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| BASILLO GARCIA § | |
|    TDCJ-CID #598955 § | |
| v. § | C.A. NO. C-12-249 |
| § | |
| JAMES HACKMAN § | |

**OPINION AND ORDER TO GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This is a pro se prisoner civil rights action filed pursuant to 42 U.S.C. § 1983.  Pending is defendant's motion for summary judgment.  (D.E. 24).  Plaintiff has submitted a response in opposition.  (D.E. 27).  For the reasons stated herein, defendant's motion is granted.

**I.  JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Pursuant to the parties' consent, (D.E. 8; D.E. 18), this case was referred to a magistrate judge to conduct all further proceedings, including entry of final judgment.  (D.E. 10); see also 28 U.S.C. § 636(c).

**II.  BACKGROUND**

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Correctional Institutions Division, and is currently confined at the McConnell Unit in Beeville, Texas.  He filed his original complaint on July 27, 2012, naming Officer James Hackman as the single defendant.  (D.E. 1).

A Spears[1] hearing was held on September 5, 2012.  The following allegations were made in plaintiff's original complaint, (D.E. 1), or at the hearing.

In May 2010, plaintiff was suspended from the McConnell Unit craft shop by Officer

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

Hackman and Warden Crites.[2]  In November 2010, he was allowed to return to the craft shop. He began working on several items including a wooden frame that included a painting of the Virgin Mary with a metal engraved plate.  Officer Hackman frequently visited the craft shop and would ask plaintiff when certain items would be ready to mail out.

On March 8, 2011, Warden Guterrez and Officer Hackman called plaintiff to the Warden's office and advised him that his craft shop privileges were being terminated, ostensibly because the wooden frame had been worked on by two other offenders in violation of the craft shop policy.  Plaintiff tried to explain that the other inmates had provided minimal assistance: painting only a few details and engraving the metal plate.  He argued that other offenders routinely help each other and that it was unfair to single him out.  Warden Guterrez told plaintiff that because he was sick and tired of plaintiff and his family complaining and filing lawsuits, he would let Officer Hackman expel him from the craft shop.  On March 14, 2011, plaintiff was administratively removed from the craft shop.

On March 17, 2011, Officer Hackman gave plaintiff a disciplinary case, Number 2011129401, for "unauthorized commodity exchange" and for violating orders from Warden Crites prohibiting craft shop inmates from sending out crafts they did not create.  He was found guilty, and his grievance challenging the case was denied.  He did not file a habeas petition challenging this disciplinary proceeding.

On March 21, 2011, Officer Hackman sent a memorandum to Warden Guterrez

---

[2] Plaintiff's challenge to the May 2010 suspension was the basis for a previous lawsuit, Garcia v. Hackman, No. C-10-311 (S.D. Tex.), in which he sued Warden Crites and Officer Hackman alleging that the suspension was motivated by retaliation.  The action was tried before a jury in February 2012.  The jury found that Officer Hackman's actions were unreasonable, but that plaintiff was not entitled to monetary damages from either defendant. See generally Garcia v. Hackman, No. C-10-311, 2012 WL 1458105 (S.D. Tex. Apr. 26, 2012) (unpublished).

explaining that he had revoked plaintiff's craft shop privileges because plaintiff had attempted to send out items that he had not made himself. He also explained that plaintiff had received two minor cases in the last year.

Plaintiff alleges that "both disciplinary cases were given [by Hackman] in retaliation for [plaintiff] exercising his right to file a grievance and a civil rights law suit." (D.E. 1, at 4). He also claims that, as a result of his craft shop privileges being revoked, he has lost approximately $8,000 in materials and tools. He seeks injunctive relief to have his craft shop privileges reinstated; $8,000 in compensatory damages; punitive damages; and a declaration that Officer Hackman violated his constitutional rights.

On September 20, 2012, an order was entered dismissing and retaining certain of plaintiff's claims. Garcia v. Hackman, No. C-12-249, 2012 WL 4339014 (S.D. Tex. Sept. 20, 2012) (unpublished). Specifically, his retaliation claim against Officer Hackman was retained, while his loss of property claim was dismissed for failure to state a claim. Id. at *4. On February 19, 2013, defendant filed a motion for summary judgment. (D.E. 24). Plaintiff submitted a response in opposition on April 1, 2013. (D.E. 27).

## III.  DISCUSSION

**A.  The Standard Of Review For Summary Judgment Motions.**

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, the Court must examine "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.  Courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  Id.  Furthermore, the Court may only consider affidavits made on personal knowledge, which set forth "such facts as would be admissible in evidence, and [show] affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477

U.S. at 250-51.

However, the usual summary judgment burden of proof is altered in the case of a qualified immunity defense. See Milchalik v. Hermann, 422 F.3d 252, 262 (5th Cir. 2005) (citation omitted). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. Id. (citation omitted). Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. Bazen v. Hidalgo County, 246 F.3d 481, 490 (5th Cir. 2001).

**B.   Defendant's Motion For Summary Judgment Is Granted In Part And Denied In Part.**

Defendant argues that summary judgment should be granted in his favor on the basis that (1) he is entitled to Eleventh Amendment immunity; (2) he is entitled to qualified immunity; and (3) plaintiff's state law conversion claims must be dismissed pursuant to § 101.106(f) of the Texas Civil Practice and Remedies Code. (D.E. 24, at 3).

**1.   Defendant is entitled to Eleventh Amendment immunity.**

Next, defendant contends that to the extent plaintiff has sued him in his official capacity he is entitled to Eleventh Amendment immunity.

The Eleventh Amendment bars claims against a state filed pursuant to § 1983 seeking monetary damages against defendants in their official capacity. Aguilar v. Texas Dep't of Crim. Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing Farias v. Bexar County Bd. Of Trustees for Mental Health Mental Retardation Servs., 925 F.2d 866, 875 n.9 (5th Cir. 1991)). "Section 1983 does not waive the state's sovereign immunity," and Texas has not otherwise consented to be sued. Id. (citing Quern v. Jordan, 440 U.S. 332, 338 n.7 (1979); Emory v. State Bd. Of Med.

Exam'rs, 748 F.2d 1023, 1025 (5th Cir. 1984)).  A suit against a state official in his or her official capacity is a suit against the official's office, and consequently, "it is no different from a suit against the State itself."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted).  Therefore, such claims are barred by the Eleventh Amendment.

To the extent plaintiff asserts a claim against defendant in his official capacity, it is effectively one against the State.  Therefore, defendant is entitled to Eleventh Amendment immunity.

### 2. Defendant is not entitled to qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citation omitted).  "To discharge this burden, a plaintiff must satisfy a two-prong test."  Atteberry v. Nocana Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005).  First, the plaintiff must show that the defendants committed a constitutional violation under current law.  Id. (citations omitted).  Second, he must show that defendants' actions were objectively unreasonable in light of the law that was clearly established at the time the events of which plaintiff complains occurred.  Id. (citations omitted).  While it will often be appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation occurred and then determining whether the constitutional right was

clearly established, that ordering of the analytical steps is no longer mandatory. Pearson, 555 U.S. at 236-37 (receding from Saucier v. Katz, 533 U.S. 194 (2001)).

        **i.    Step 1–Constitutional violation**.

A prisoner's First Amendment right of access to the courts includes the right to seek redress through an established prison system. See Jackson v. Cain, 864 F.2d 1235, 1248-49 (5th Cir. 1989). Prison officials may not retaliate against a prisoner for exercising this right. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted). Because it is well established that prison officials may not retaliate against a prisoner for exercising the right to file lawsuits and administrative grievances, actions that might not otherwise be offensive to the Constitution can give rise to a constitutional claim if taken in retaliation for the exercise of the protected conduct. Id. at 1165 ("An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.") (citations omitted).

To ultimately prevail on a § 1983 claim for retaliation, "'a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.'" Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006) (quoting McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not withstand a summary judgment challenge." Woods, 60 F.3d at 1166 (citation omitted).

The purpose of allowing retaliation claims pursuant to "§ 1983 is to ensure that prisoners

are not unduly discouraged from exercising constitutional rights." Morris, 449 F.3d at 686 (citing Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998)).  However, some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." Id.  "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." Id.  For example, a job transfer from the commissary to the kitchen might be *de minimis*, while a transfer to a more dangerous unit might constitute an adverse retaliatory act. Id. at 687.

Here, plaintiff alleges that defendant unjustifiably wrote him a disciplinary case, resulting in his loss of craft room privileges, in retaliation for having previously filed a lawsuit against him.  These allegations sufficiently identify a specific constitutional right.  It is well-settled that a prisoner's First Amendment right of access to the courts includes the right to seek redress through an established prison system, see Cain, 864 F.2d at 1248-49, and equally well-settled that prison officials may not retaliate against a prisoner for exercising this right.  See Woods, 60 F.3d at 1164.  Plaintiff alleges actions clearly prohibited by the First Amendment as established by Cain and other longstanding precedent, and he has therefore sufficiently alleged a specific constitutional right.

However, plaintiff has not established that defendant acted with retaliatory intent, and therefore his retaliation claim must fail for the purposes of qualified immunity.  The evidence shows that plaintiff violated a TDCJ craft shop policy, as well as an order from Warden Crites, and that these violations formed the basis of defendant's disciplinary case against him.  On April 14, 2010, plaintiff had attempted to send other inmates' leather goods along with his own wood craft, in violation of the McConnell Unit Craft Shops Standard Operating Procedure providing

that "[o]nly items made by the offender will be allowed to be sent out." (D.E. 24-6, at 9). As a result, plaintiff's craft shop privileges were suspended.[3] After they were reinstated, Warden Crites held a meeting for craft shop inmates ordering them not to send out crafts that were not their own. Subsequently, plaintiff used raw materials from other inmates, including engraved metal plates, to complete his own wood working project. This was a violation of TDCJ craft shop policy providing that "[o]ffenders are not permitted to receive raw materials from other offenders, as trafficking and trading, is prohibited." (D.E. 24-2, at 6). In addition, he attempted to send this item to his fiancée, which constituted a violation of Warden Crites' order.

Plaintiff's defenses to these allegations do not pertain to his underlying conduct, which is not in dispute. Rather, he attacks the legitimacy of his disciplinary sanctions on the basis that, based on his own interpretation of TDCJ policy, his conduct was not prohibited. In particular, he indicates that his use of engraved metal plates did not violate TDCJ policy at all, because there is no rule prohibiting inmates from using other materials in completing projects. Even assuming this proposition is true, plaintiff overlooks the fact that he was convicted of impermissibly *obtaining* raw materials from other inmates, as opposed to using certain materials to complete his project. Furthermore, the question of whether Warden Crites' order can be construed as prohibiting him from sending his project because it incorporated another inmate's engraved metal plate turns on an interpretation of that order. In sum, there is no fact dispute regarding plaintiff's conduct, and he has offered no compelling evidence that he did not, in fact, violate TDCJ policies that formed the basis of his craft room sanctions. Accordingly, the fact that

---

[3] This conduct formed the basis of plaintiff's prior lawsuit. See Garcia v. Hackman, No. C-10-311, 2011 WL 2457918, at *3-4 (S.D. Tex. June 16, 2011) (unpublished).

defendant wrote a disciplinary case against him based on these violations does not establish retaliatory motive. See Hearn v. Arpaio, No. CV-03-1924, 2007 WL 1381616, at *5 (D. Ariz. May 9, 2007) (unpublished) (granting defendant's summary judgment on retaliation claim where inmate "violated the policies, and his actions represented a security concern"). Finally, plaintiff has submitted numerous affidavits from other inmates indicating that defendant Hackman selectively writes disciplinary cases arising from craft shop violations based on an inmate's race. Even if true, this assertion does not tend to prove that defendant intended to retaliate against plaintiff because he filed a lawsuit against him.[4] Accordingly, plaintiff has not sufficiently alleged defendant's retaliatory intent for the purposes of establishing a constitutional violation.

### ii. Step 2–Objective reasonableness.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the defendant's actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

In this case, plaintiff has failed to establish the violation of a constitutional right.

---

[4] Rather, these allegations are better suited for an equal protection claim. See Taylor v. Johnson, 257 F.3d 470, 473 (5th Cir. 2001) (to establish equal protection violation, plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.").

Accordingly, defendant is entitled to the defense of qualified immunity. <u>Saucier</u>, 533 U.S. at 201.

### 3. Plaintiff's state law conversion claim is dismissed because he has failed to present a substantial federal claim.

Lastly, defendant contends that plaintiff appears to have asserted a state law claim of conversion because in his complaint he alleges "unlawful conversion of property." (D.E. 1, at 3). If so, he argues, this claim must be construed as an official capacity claim pursuant to the Texas Tort Claims Act, and must be dismissed as barred by Eleventh Amendment immunity.

Pursuant to the Texas Tort Claims Act, "governmental units" in Texas waive their immunity from suit as to certain tort actions. Tex. Civ. Prac. & Rem. Code § 101.021. The Texas Civil Practice and Remedies Code further sets out rules that govern these actions against state employees:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.

Tex. Civ. Prac. & Rem. Code § 101.106(f). A suit that "could have been brought under this chapter" excludes intentional torts. Tex. Civ. Prac. & Rem. Code § 101.057(2); <u>see also</u> <u>Garcia v. City of Harlingen</u>, No. B-06-CV-134, 2009 WL 159583, at *14 (S.D. Tex. Jan. 21, 2009) (unpublished) (claim for defamation based on actual malice excluded from Texas Tort Claims Act because it is an intentional tort) (citing <u>Continental Coffee Prods. Co. v. Cazarez</u>, 937 S.W.2d 444, 452-53 (Tex. 1996)); <u>Lopez v. Williams</u>, No. 09-04-445 CV, 2006 WL 2789027, at *4 (Tex. App. 2006) (unpublished) (claims based on intentional acts cannot be brought pursuant

to the Texas Tort Claims Act).

Here, plaintiff has asserted a conversion claim against defendant Hackman.  Pursuant to Texas law, conversion is an intentional tort.  University of Houston Main Campus v. Simons, No. 01-02-00368-CV, 2002 WL 31388906, at *2 (Tex. App. Oct. 24, 2002) (unpublished) (citing Texas River Barges v. City of San Antonio, 21 S.W.3d 347, 356-67 (Tex. App. 2000)) (additional citations omitted).  Accordingly, his claim does not fall within the meaning of the Texas Tort Claims Act and it need not be construed as a "suit ... against [defendant] in [his] official capacity only" pursuant to § 101.106(f).  Rather, plaintiff is allowed to proceed against defendant in his individual capacity.

Nevertheless, because defendant is entitled to qualified immunity regarding plaintiff's federal claim, his remaining state law claim should be dismissed.  Pendent jurisdiction may be exercised by a federal court over a state law claim when the plaintiff presents a substantial federal claim and when the "state and federal claims ... derive from a common nucleus of operative fact."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).  Even when these two conditions are met, however, the exercise of such jurisdiction remains within the court's discretion, and it should only be exercised after weighing "'the values of judicial economy, convenience, fairness, and comity.'"  Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 586 (5th Cir. 1992) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  Accordingly, because plaintiff has not presented a substantial federal claim, his state law conversion claim is dismissed.

## IV.  CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment, (D.E. 24), is granted and plaintiff's complaint, (D.E. 1), is dismissed.

ORDERED this 24th day of April 2013

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE